UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JORGE L. LINARES,

                              Plaintiff,

            -against-

ANTHONY ANNUCCI, as Acting
Commissioner for the Department of
Corrections and Community Supervision, et al.,

                              Defendants.

**MEMORANDUM OPINION
AND ORDER**

19-CV-11120 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Jorge L. Linares ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, initiated this action under 42 U.S.C. § 1983 on December 4, 2019. (*See* Doc. 2). Plaintiff alleges in the First Amended Complaint ("FAC"), the operative pleading, that sixteen individual Defendants denied his applications for parole in a "manner . . . denying him due process of law." (Doc. 36 at 3-38, "FAC" ¶ 4).[1] Plaintiff presses two claims for relief. The first seeks a declaratory judgment that New York State law created a liberty interest in his parole protected by the Fourteenth Amendment. (*Id.* ¶¶ 103-10). The second maintains that three decisions denying him parole violated the Fourteenth Amendment because they were rendered in violation of state laws and regulations. (*Id.* ¶¶ 111-22). The sixteen individual Defendants named herein are Anthony Annucci ("Annucci"), Acting Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"), Tina M. Stanford ("Stanford"), Chairwoman of the New York State Board of Parole ("Parole Board"), and Parole Board Commissioners Walter W. Smith ("Smith"),

---

[1] Plaintiff filed the FAC as an attachment to a letter filed on August 26, 2020. Citations herein accordingly correspond only to the amended pleading, contained at pages 3-38 of the associated docket entry. (*See also* Doc. 33-1). Moreover, although the Court did not grant Plaintiff leave to file the FAC, because the parties' briefing concerns the FAC, Plaintiff is granted leave to file the FAC *nunc pro tunc* as of August 26, 2020, the day the Court received the FAC from Plaintiff.

Ellen E. Alexander ("Alexander"), Marc Coppola ("Coppola"), Tana Agostini ("Agostini"), Charles Davis ("Davis"), Erik Berliner ("Berliner"), Otis Cruse ("Cruse"), Tycee Drake ("Drake"), Caryne Demosthenes ("Demosthenes"), Carlton Mitchell ("Mitchell"), Michael Corley ("Corley"), Chan Woo Lee ("Lee"), Sheila Samuels ("Samuels"), and Elsie Segarra ("Segarra," and collectively, "Defendants").

Defendants filed a motion to dismiss the FAC on October 1, 2020. (Doc. 41; Doc. 44, "Def. Br."). Plaintiff opposed the motion by memorandum of law docketed on November 19, 2020 (Doc. 49, "Opp."), and the motion was briefed fully with the filing of Defendants' reply memorandum of law in further support of their motion on December 7, 2020 (Doc. 52, "Reply Br.").[2]

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

_____

[2] Defendants also filed a declaration providing six exhibits for the Court's consideration. (*See* Doc. 42, "Shevlin Decl."). Those documents are: (1) the transcript of Plaintiff's June 26, 2019 Parole Board interview (Doc. 42-1, "Shevlin Ex. A"); (2) the Parole Board Release Decision Notice associated with the June 26, 2019 interview (Doc. 42-2, "Shevlin Ex. B"); (3) the transcript of Plaintiff's November 20, 2019 Parole Board interview (Doc. 42-3, "Shevlin Ex. C"); (4) the Parole Board Release Decision Notice associated with the November 20, 2019 interview (Doc. 42-4, "Shevlin Ex. D"); (5) the transcript of Plaintiff's June 24, 2020 Parole Board interview (Doc. 42-5, "Shevlin Ex. E"); and (6) the Parole Board Release Decision Notice associated with the June 24, 2020 interview (Doc. 42-6, "Shevlin Ex. F"). Plaintiff likewise filed a declaration in opposition with two exhibits for consideration. (Doc. 50, "Linares Decl."). Plaintiff's documents are: (1) the Administrative Appeal Decision Notice, with the Appeals Unit Findings & Recommendation, concerning the November 2019 interview (Doc. 50 at 4-5, "Linares Ex. 1"); and (2) the Administrative Appeal Decision Notice, with Appeals Unit Findings & Recommendation, concerning the June 2020 interview (Doc. 50 at 7-8, "Linares Ex. 2"). Given the gravamen of Plaintiff's allegations—and the fact that he references or quotes these documents in the FAC—they are considered properly at this juncture. *See, e.g.*, *Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) ("Where an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks omitted)); *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014) ("[T]he Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence."); *Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011); *see also Rivera v. Royce*, No. 19-CV-10425, 2021 WL 2413396, at *5 n.2 (S.D.N.Y. June 11, 2021). Plaintiff also filed copies of: (1) a September 17, 2020 Decision & Order issued in the New York State Supreme Court, Dutchess County, in *Jennings v. Stanford*, No. 2020-51294 (N.Y. Sup. Ct., Dutchess Cty.); and (2) a Notice filed on May 13, 2008 in the United States District Court for the Northern District of New York, in *Donhauser v. Goord*, No. 01-CV-1535 (N.D.N.Y.). (Doc. 51). The Court may take judicial notice of these filings. *See Marom v. Town of Greenburgh*, No. 20-CV-03486, 2021 WL 797648, at *2 n.5 (S.D.N.Y. Mar. 2, 2021).

# BACKGROUND

Plaintiff alleges that he was convicted "of several sex offenses in 1996" following a jury trial and, as a result, is currently serving an indeterminate sentence with a minimum of sixteen years and eight months to a maximum of forty years in DOCCS' custody. (FAC ¶¶ 8-9). Plaintiff alleges that despite "complet[ing] all of the rehabilitative therapeutic programs required . . . and other voluntary rehabilitative therapeutic programs," Defendants have denied him parole seven times. (*Id*. ¶ 9). The heart of Plaintiff's extant allegations is that three of those decisions were rendered in violation of New York State law. (*See id*. ¶¶ 2, 7, 11-23, 92-102).

## I.   The First Denial of Parole (June 26, 2019 Interview)

Plaintiff appeared for a parole interview with Drake, Alexander, and Davis on June 26, 2019. (*Id*. ¶ 49; *see also* Shevlin Ex. A; Shevlin Ex. B). Parole was denied following the interview. (FAC ¶¶ 14-17, 49-50). The resultant Parole Board Release Decision Notice states:

> After carefully reviewing your record and conducting a personal interview, parole is denied.
>
> You were convicted of two counts of rape 1st two counts of sexual abuse 1st and criminal solicitation for actions over a period of time engaging in sexual activity with two of your young children. You continue to maintain your innocence for these crimes. The Panel makes note of your efforts towards rehabilitation including your completion of sex offender programming, your educational pursuits, and your participation in alternatives to violence and the reconciliation workshop. We have reviewed your case plan and your risk and needs assessment which indicates your lower risk and needs scores, as well as your overall disciplinary record which has been clean since 2012. Further, your release plans, your deportation status, and your extensive parole packet were considered.
>
> While this Panel notes your personal growth and productive use of time, discretionary release shall not be granted merely as a reward for good conduct or efficient performance of duties while confined. This case involved sexual actions with your own children on an ongoing and continuous basis. We carefully reviewed your sentencing minutes which included your statements and the judges' comments that "you were guilty of these heinous crimes and they

> simply disbelieved your version of the events. I think the evidence
> is overwhelming".
>
> The Panel departs from the low COMPAS risk and needs scores as
> the jurys verdict and judges statements point to the violation of trust
> towards your young children. Your statement that you said what you
> needed to say[] to complete sex offender programming leads this
> Panel to question whether your written personal statement which
> includes language of empathy towards your children is genuine.
>
> The official opposition to your release indicates your release at this
> time would not be compatible with the welfare of society. Further
> your release would trivialize the harm you caused your family and
> in particular the two children forced to testify and would therefore
> deprecate the serious nature of these crimes as to undermine respect
> for the law.

(Shevlin Ex. B at 2-3; *see also* Shevlin Ex. A at 20-21).[3] Plaintiff maintains that he "filed a timely notice of appeal and administrative appeal," but that a decision was not rendered "within the four month statute of limitation[s] found in their regulation." (FAC ¶ 51 (citing N.Y. Comp. Codes R. & Regs. tit. 9, § 8006.4(c))).

II.    The Second Denial of Parole (November 20, 2019 Interview)

Plaintiff next appeared for an interview with Lee, Agostini, and Samuels on November 20, 2019. (Shevlin Ex. C; Shevlin Ex. D).[4] At the start of that hearing, Lee indicated that he could not locate the packet Plaintiff submitted in advance of the hearing. (Shevlin Ex. C at 3-5). Lee advised Plaintiff, "I think it's only fair . . .  I think we have to adjourn your interview for another month. You will be seen by another Board." (*Id*. at 5). Plaintiff opposed the adjournment, insisted that the interview proceed, and stated that he could "tell [Lee] about" the submission. (*Id*. at 5). Although

---

[3] In its original form, the quoted text is a single, continuous block without indentation of any kind. The Court has inserted breaks into the text for ease of reference.

[4] Plaintiff claims both that the interview was held on November 20, 2019 and November 21, 2019. (FAC ¶¶ 2, 7, 13, 18, 52, 63, 68, 100, 116, 120). As the transcripts and associated paperwork submitted indicate that the interview was held on November 20, 2019, the Court concludes that the interview occurred on that date. This determination, however, has no bearing on the Court's analysis.

the interview was closed over Plaintiff's objection, it was reopened after Lee discovered that he

did, in fact, have the file and had reviewed it. (*Id*. at 7). Parole was again denied. (FAC ¶¶ 18-19,

52-53). The Commissioners explained:

> A review of the record, interview and deliberation, the Panel concludes that if release at this time there is a reasonable probability that you would not live and remain at liberty without again violating the law and your release would be incompatible with the welfare of the society.
>
> Required statutory factor have been considered, together with your institutional adjustment including discipline and program participation, your risk and needs assessment and your need for successful re-entry into the community. Your release plan has also been considered, as well as your COMPAS Risk Assessment and case plan.
>
> You were convicted, following a jury verdict, of two counts of rape in the first degree, two counts of sex abuse in the first degree, two counts of endangering the welfare of a child and one count of criminal solicitation in the first degree. You were sentenced to an aggregate term of 16 years and 8 months to 40 years.
>
> In the instance offense, you engaged in sexual abuse (sexual intercourse, sexual abuse and criminal solicitation of child to perform sexual intercourse) on your children was ongoing and continuous while they were under the age of 11 years old. During your interview, you continued to assert your innocence of these crimes despite the fact that you signed a confession at the police station and your conviction by a jury.
>
> The Panel also considered your low COMPAS scores. However, the Panel departs from the COMPAS in light of your conviction after a jury trial.
>
> The Panel notes your completion of the Sex Offender Counseling Treatment Program, Aggression Replacement Training, Vocational Titles, Transitional Services Phase I and II and you are currently on the wait list for Traditional Services Phase III. The Panel also notes your work at the library as a paralegal assistant and your clean disciplinary record since 2012. However, discretionary release on parole shall not be granted as a reward for good conduct or efficient performance of duties while confined.

There is a strong opposition to your release in the file. Therefore, based on all required factors in the file considered, discretionary release is not appropriate at this time.

(Shevlin Ex. D at 2-3; *see also* Shevlin Ex. C at 24-26). Plaintiff filed a timely appeal of this determination. (FAC ¶ 54).

In April 2020, the Appeals Unit vacated and remanded the matter for a *de novo* interview. (*Id*. ¶ 54; Linares Ex. 1). The logic underlying this directive concluded:

All of appellant's COMPAS scores are in the low or unlikely category. The Board decision says it is departing from the COMPAS due to his conviction after a jury trial. That is not a proper reason for a departure. As such, a de novo is warranted.

(Linares Ex. 1 at 5; *see also* FAC ¶ 54).

III. The Third Denial of Parole (June 24, 2020 Interview)

Plaintiff appeared for his *de novo* interview before Mitchell and Cruse on June 24, 2020. (FAC ¶ 56; *see also* Shevlin Ex. E; Shevlin Ex. F). Parole was, again, denied:

After a review of the record, interview and deliberation, the Panel has determined that if released at this time, there is a reasonable probability that you would not live and remain at liberty without again violating the law and that your release would be incompatible with the welfare and safety of society and would so deprecate the serious nature of the crime as to undermine respect for the law. Required statutory factors have been considered, together with your institutional adjustment including discipline and program participation, your risk and needs assessment, and your needs for successful re-entry into the community. More compelling, however, are the following: you stand convicted of rape 1st (two counts), sexual abuse 1st (two counts), and criminal solicitation 3rd by jury trial and sentenced to 16-08 / 40-00. The victims were your children whereby you violated the highest possible level of trust that a human being can share: parent to child.

The Panel noted your positive program completions and participation to date and considered your notable rehabilitative efforts. We do see the growth and maturity that one might expect with the passage of significant time. The Panel also notes the numerous letters of assurances and support that you have received. We have reviewed your comprehensive parole packet as well.

> The Panel has weighed and considered the results of your COMPAS risk assessment and the low scores indicated therein. However, the Panel departs from the COMPAS because despite your claim of innocence, the jury was convinced beyond a reasonable doubt that you were guilty of these heinous crimes against your children, and they disbelieved your version of the events. You stated that your children were coached in providing testimony against you. This Panel is hard pressed to believe your version of events, particularly in light of the fact that your victims' statements remain consistent over all these years. Your lack of insight into the destruction that has befallen on your family structure and willingness to accept responsibility is of concern to this Panel. Parole is denied.

(Shevlin Ex. F at 2-3; *see also* Shevlin Ex. E at 32-33). Plaintiff appealed this denial. (FAC ¶ 60).

In October 2020, the Appeals Unit issued another decision vacating and remanding the matter for a second *de novo* interview. (Linares Ex. 2). Echoing its prior decision, the Appeals Unit concluded:

> The prior Board decision was held to be invalid because the reason given for the departure from the COMPAS (conviction after a jury trial) was not legally proper. This current Board decision states the departure from the COMPAS is due to the jury believing beyond a reasonable doubt that appellant was guilty of these heinous crimes against his own children, despite his claims of innocence. As the reason given the for the departure this time is very similar to the invalid reason given for the departure at the prior interview, a second de novo interview is warranted.

(*Id*. at 8). There is no further information regarding the outcome of the second *de novo* interview.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL

3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. Yet, the Court has also a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

As mentioned previously, Plaintiff proceeds under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Plaintiff alleges here that Defendants violated his Fourteenth Amendment right to due process. (*See, e.g.*, FAC ¶¶ 103-22). The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. "[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient

process." *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021)

(quoting *Adams v. Annucci*, No. 17-CV-03794, 2018 WL 4608216, at *6 (S.D.N.Y. Sept. 25, 2018)

(alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020 WL 777907, at

*9 (S.D.N.Y. Feb. 18, 2020). Defendants argue that dismissal is proper because, *inter alia*, Plaintiff

failed to plead certain Defendants' personal involvement and, in any event, Plaintiff has not and

cannot state a claim for violation of his Fourteenth Amendment rights. The Court considers these

arguments *seriatim*.[5]

I.   <u>Failure to Plead Certain Defendants' Personal Involvement</u>

As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the

defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F.

App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to

allege that a defendant was personally involved in, or responsible for, the conduct complained of

renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886

(2d Cir. 1987) (internal quotation marks omitted). Moreover, the fact that a defendant is a

supervisor is not enough to impute personal involvement onto that person; rather, even supervisory

liability requires that the "defendant, through the official's own individual actions, has violated the

Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S.

at 676)). Plaintiff, in this case, failed to implicate a number of Defendants—half of them, to be

precise—in any purported constitutional violation.

Plaintiff seeks to proceed against Annucci and Stanford, the Acting Commissioner of

DOCCS and the Chairwoman of the Parole Board, respectively, "under a theory of *respondeat*

---

[5] Defendants argue also that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and that the Eleventh Amendment provides immunity for any claim seeking damages stated against them in their official capacity. (Def. Br. at 19-21). Given the conclusions reached herein, the Court need not and does not reach those arguments.

*superior.*" (Opp. at 4; *see also* FAC ¶¶ 25-26). Precedent, however, rejects this theory of liability. *See, e.g.*, *Randolph v. Cuomo*, No. 20-CV-04719, 2020 WL 6393015, at *3 (E.D.N.Y. Nov. 2, 2020) ("Liability under Section 1983 cannot be generally imposed on a supervisor solely based on his or her position; there is no *respondeat superior* or vicarious liability under Section 1983."); *Berman v. Williams*, No. 17-CV-02757, 2019 WL 4450810, at *4 (S.D.N.Y. Sept. 17, 2019) ("There is no *respondeat superior* liability in § 1983 cases." (quoting *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995)); *see also Russell v. Stanford*, No. 21-CV-00296, 2021 WL 1565147, at *5 (N.D.N.Y. Apr. 21, 2021) (dismissing Annucci and Stanford because they were not personally involved in the allegedly unconstitutional conduct). Annucci and Stanford are, accordingly, dismissed because Plaintiff failed to plead their personal involvement in a constitutional violation.

Turning to several of the other Defendants named in this action, Plaintiff only mentions Smith, Coppola, Berliner, Demosthenes, Corley, and Segarra because they are members of the Parole Board. (FAC ¶¶ 26, 28, 31, 34, 36, 39).[6] Plaintiff, in his opposition papers, insists that it is "technically incorrect" to argue that these six specific Defendants "did not participate in the administrative appeals process" associated with the June 2019, November 2019, and June 2020 decisions because the names on the Administrative Appeal Decision Notices are not printed and the signatures cannot be deciphered. (Opp. at 5). Regardless of whether any of these Defendants was responsible for *not* rendering a decision with respect to the June 2019 interview *or* rendering decisions favorable to Plaintiff during the appeals of the November 2019 and June 2020 interviews—the latter of which would, according to Plaintiff's theory, be vacating and remanding decisions reached in violation of due process—Plaintiff fails to explain how any of these individuals was responsible for violating his due process rights under the Fourteenth Amendment.

---

[6] Two paragraphs in the FAC are labeled "26."

*See, e.g.*, *Moore v. Peters*, 92 F. Supp. 3d 109, 125 n.6 (W.D.N.Y. 2015) ("An individual must have been personally involved in the deprivation of a plaintiff's constitutional right to be held liable for that deprivation."); *Hamilton v. New York City Mun.*, No. 11-CV-00348, 2012 WL 398819, at *10-11 (N.D.N.Y. Jan. 10, 2012) (dismissing defendant where plaintiff did not allege that the individual "played any active role in his parole proceedings"), *adopted by* 2012 WL 386631 (N.D.N.Y. Feb. 7, 2012). Therefore, Smith, Coppola, Berliner, Demosthenes, Corley, and Segarra are also dismissed from this action because Plaintiff failed to plead their personal involvement in a constitutional violation.[7]

Having addressed the preliminary issue of personal involvement, the Court turns to whether Plaintiff has stated plausibly his claims for relief against the remaining Commissioners.

II.  First Claim for Relief: No Declaratory Judgment Claim for Relief Exists

Plaintiff's first claim for relief appears to be one for a declaratory judgment stating that New York State's statutory scheme confers a liberty interest in parole; the second claim for relief is, correspondingly, that the Parole Board's decisions violated Plaintiff's procedural due process rights. (*See* FAC ¶¶ 103-22). While Defendants did not address this issue, the first claim for relief must be dismissed for the simple fact that the law does not recognize a declaratory judgment claim for relief.[8] *See Wirth v. City of Rochester*, No. 17-CV-06347, 2020 WL 5814417, at *8 (W.D.N.Y.

---

[7] Plaintiff argues in his opposition that he "is . . . entitled to assistance . . . in identifying the Defendants who participated [in] the administrative appeal process for each challenged hearing." (Opp. at 5). Insofar as Plaintiff seeks an Order under *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) through his opposition brief, that request must be denied because it is procedurally improper. *Cf. Martin v. Mihalik*, No. 19-CV-07979, 2021 WL 1738458, at *1 n.3 (S.D.N.Y. May 3, 2021); *Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *12 (S.D.N.Y. Feb. 17, 2021); *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, No. 04-CV-02199, 2011 WL 1236135, at *1 n.2 (S.D.N.Y. Mar. 30, 2011).

[8] "Although not raised in Defendants' motion to dismiss, under 28 U.S.C. § 1915(e)(2), a court may *sua sponte* dismiss a claim if it is frivolous, malicious, or fails to state a claim." *Centonze v. Munson*, No. 19-CV-01017, 2020 WL 730608, at *9 n.1 (N.D.N.Y. Feb. 13, 2020) (internal quotation marks omitted).

Sept. 30, 2020) ("[D]eclaratory judgments and injunctions are remedies, not causes of action." (quoting *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014) (alteration in original)); *Abraham v. Town of Huntington*, No. 17-CV-03616, 2018 WL 2304779, at *14 (E.D.N.Y. May 21, 2018) ("The Second Circuit has maintained that a declaratory judgment is a remedy, not a cause of action." (citing *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993)); *see also Cicero v. Intellor Grp., Inc.*, No. 18-CV-06934, 2021 WL 1720810, at *8 (W.D.N.Y. Apr. 30, 2021) ("The request for a declaratory judgment is not a cause of action; it is a request for a remedy that does not exist independent of a plausible underlying claim for relief." (internal quotation marks omitted)); *DeLeon v. Teamsters Loc. 802, LLC*, No. 20-CV-00024, 2021 WL 1193191, at *8 (E.D.N.Y. Mar. 29, 2021) ("[I]t is well settled that a request for declaratory . . . relief is not an independent cause of action." (quoting *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 627 (E.D.N.Y. 2018) (alterations in original)). Accordingly, Plaintiff's first claim for relief is dismissed.

III.   Second Claim for Relief: Plaintiff Failed to Plead a Due Process Violation

Giving Plaintiff every benefit of the liberality afforded him as a *pro se* litigant, the second claim for relief arguably seeks relief (albeit declaratory and for "fees and costs" (FAC ¶¶ (a)-(f)) pursuant to 42 U.S.C. § 1983, and will be considered as such. In order for Plaintiff to state plausibly a claim for violation of his Fourteenth Amendment procedural due process rights, he must: (1) identify a protected liberty interest; and (2) identify the procedure that deprived him of that liberty interest. *See Joseph*, 2021 WL 200984, at *6. Here, Plaintiff fails to plausibly allege either element.

A.   Prong One: Protected Liberty Interest

The Court considers first the existence of a liberty interest. "In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate

expectancy of release that is grounded in the state's statutory scheme." *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001) (per curiam)); *see also Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) ("[I]n order to have a protectable liberty interest, a prisoner must have more than a hope or a unilateral expectation of release." (quoting *Green v. McCall*, 822 F.2d 284, 288 (2d Cir. 1987) (alteration in original))). The Second Circuit has concluded consistently—for more than two decades—that New York State's parole structure does not create a protected liberty interest for the typical prisoner seeking parole. *See, e.g.*, *Bottom v. Pataki*, 610 F. App'x 38, 40 (2d Cir. 2015) ("As an initial matter, '[t]he New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release,' and prisoners in New York 'have no liberty interest' in receiving parole." (quoting *Barna*, 239 F.3d at 171)); *Graziano*, 689 F.3d at 114 ("We have squarely held that because the New York parole scheme is not one that creates a legitimate expectancy of release . . . the protections of the Due Process Clause are inapplicable." (internal quotation marks omitted)); *cf. Hurd v. Fredenburgh*, 984 F.3d 1075, 1088 n.6 (2d Cir. 2021) (observing that "[n]o inmate is entitled to parole; it is a discretionary decision reserved to the judgment of the parole board"). Plaintiff insists that recent amendments to applicable law and regulations have altered these conclusions. The Court disagrees.

The Parole Board in New York State possesses "the power and duty of determining which inmates serving an indeterminate . . . sentence of imprisonment may be released on parole . . . and when and under what conditions." N.Y. Exec. Law § 259-c(1). The law cautions, however, that:

> Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for the law.

N.Y. Exec. Law § 259-i(2)(c)(A). The statute requires that the Parole Board, in reaching its conclusion, "shall" consider eight specific items associated with the particular applicant:

> (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interactions with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government against the inmate while in the custody of the department and any recommendation regarding deportation made by the commissioner of the department pursuant to section one hundred forty-seven of the correction law; (v) any current or prior statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated; (vi) the length of the determinate sentence to which the inmate would be subject had he or she received a sentence pursuant to section 70.70 or section 70.71 of the penal law for a felony defined in article two hundred twenty or article two hundred twenty-one of the penal law; (vii) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest prior to confinement; and (viii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

*Id*. The statutory scheme also places on the Parole Board a responsibility to:

> establish written procedures for its use in making parole decisions as required by law. Such written procedures shall incorporate risk and needs principles to measure the rehabilitation of persons appearing before the board, the likelihood of success of such persons upon release, and assist members of the state board of parole in determining which inmates may be released to parole supervision.

N.Y. Exec. Law § 259-c(4). Those procedures exist, in their current form, in Title 9 of the New York Complication of Codes, Rules and Regulations of the State of New York.

The applicable regulations direct, in pertinent part, that the Parole Board "shall be guided by risk and needs principles, including the inmate's risk and needs scores as generated by a

periodically-validated risk assessment instrument . . . ." N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.2(a). That instrument is the "COMPAS" tool referred to by the decisions issued following Plaintiff's Parole Board interviews. (*See, e.g.*, FAC ¶ 11 ("As evidenced by the Correctional Offender Management Profile and Sanctions Risk and Needs Assessment (*hereinafter* COMPAS) prepared by defendants . . . ." (italics in original)); Def. Br. at 5 ("The risk and needs assessment scores are also known as COMPAS (Correctional Offender Management Profiling for Alternative Sanctions).")). Should the Parole Board depart from the COMPAS in denying release, it "shall specify any scale . . . from which it departed and provide an individualized reason for such departure." N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.2(a). When an application is denied, the regulations also outline how and in what form the inmate shall be informed of the Parole Board's decision. N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.3(b); *see also* N.Y. Exec. Law § 259-i(2)(a).

Plaintiff insists that the statutory and regulatory scheme outlined above confers a protectable liberty interest because it creates a legitimate expectation of parole. (*See* FAC ¶¶ 103-10). Plaintiff argues that the amended statute creates the standard to evaluate an application for parole, the factors to be evaluated, the method to be used in weighing the factors, and, in effect, "cabins the discretion" of the Parole Board and creates a legitimate expectation of parole. (Opp. at 14; *see also id*. at 9-21; FAC ¶¶ 92, 105). New York State's statutory and regulatory scheme creates no such legitimate expectation of parole. Even if the Court assumes that Plaintiff had the lowest COMPAS scores possible at every interview, release was not a foregone conclusion. The Parole Board retained discretion to deny Plaintiff's application. *See* N.Y. Exec. Law § 259-c(1). "As Judge Friendly observed, 'there is a human difference between losing what one has and not getting what one wants.'" *Victory*, 814 F.3d at 59-60 (quoting *Greenholtz v. Inmates of Neb. Penal &*

*Corr. Complex*, 442 U.S. 1, 10 (1979)). All that exists under New York State law here—even after the recent amendments—is the latter.

Plaintiff suggests that Judge Briccetti's recent decision in *Flores v. Stanford*, No. 18-CV-02468, 2019 WL 4572703 (S.D.N.Y. Sept. 20, 2019) supports his argument. (Opp. at 6-7). The Court concludes just the opposite. Judge Briccetti, in that case, reaffirmed that "for a typical prisoner who has not been granted parole, neither the mere possibility of release, nor a statistical probability of release, gives rise to a cognizable liberty interest in parole." *Flores*, 2019 WL 4572703, at *10 (internal quotation marks omitted). The plaintiffs before Judge Briccetti were not "typical" inmates, however; they were all convicted of murder as juveniles and serving indeterminate sentences of incarceration with a maximum term of life imprisonment with the possibility of parole. *Id*. at *1. Citing three decisions rendered by the United States Supreme Court, Judge Briccetti determined that, unlike a "typical" prisoner, those "juvenile offenders serving a maximum term of life have a cognizable liberty interest in obtaining parole upon demonstrating maturity and rehabilitation." *Id*. *10. But Plaintiff—an adult sentenced to a term of imprisonment after a jury found him guilty of raping and sexually abusing his own minor children—is a "typical" prisoner from a parole point of view, not a minor convicted of murder. The fact that Judge Briccetti recognized a liberty interest on the specific facts of *Flores* because the United States Supreme Court had determined such prisoners were entitled to parole on a showing of demonstrated maturity and rehabilitation is of no consequence here. Plaintiff does not fit into the exception Judge Briccetti's case involved. Nor does that finding alter the Court's conclusion that New York State law does not confer upon this Plaintiff a protectable liberty interest. *See also Franza v. Stanford*, No. 16-CV-07635, 2019 WL 452053, at *6 (S.D.N.Y. Feb. 5, 2019) ("As an initial matter, Plaintiff

has no liberty interest in parole, and the protections of the Due Process Clause are inapplicable." (internal quotation marks omitted)).

The hallmark for recognizing a liberty interest in the Second Circuit has arisen in factual situations where the expectation of release was legitimate. The inmate in *Victory*, for example, was given an open parole date within six months, and the Circuit panel recognized that a liberty interest was "already-granted." 814 F.3d at 60. So too, in *Hurd*, the Circuit panel recognized that once an inmate meets the statutory prerequisites for conditional release, conditional release is mandatory. 984 F.3d at 1085. Again, a legitimate expectation of release was present in the context of a mandatory conditional release. *Id.* at 1088 n.6. Here, no such legitimate expectation of release is present. Parole, for this plaintiff, under New York State's current statutory scheme is entirely discretionary, as the statutes do not create more than a mere possibility, statistical probability, or hope for parole. Although Plaintiff may have a right to raise issues under state law in connection with his failed parole bids, he simply has no federal constitutional right to complain as he sought to do herein.

Notwithstanding the foregoing, "[a]lthough New York prisoners do not have a right to parole, and the full panoply of constitutional protections that would accompany such a right, the due process clause nevertheless extends to provide a 'federally-protected liberty interest in . . . not being denied parole for arbitrary or impermissible reasons.'" *Germenis v. New York State Dep't of Corr. Servs.*, No. 08-CV-08968, 2009 WL 2877646, at *3 (S.D.N.Y. Sept. 9, 2009) (quoting *Mathie v. Dennison,* No. 06-CV-03184, 2007 WL 2351072, at *6 (S.D.N.Y. Aug. 16, 2007)). Termed "minimal due process rights" by the Second Circuit, these rights are "limited to not being denied parole for [constitutionally] arbitrary or impermissible reasons,' which requires a showing of 'egregious official conduct.'" *Bottom*, 610 F. App'x at 40 (quoting *Graziano*, 689 F.3d at 116

(alterations in original)); *see also Mathie*, 2007 WL 2351072, at *6 (noting that "[a]n inmate's federally-protected liberty interest in parole is limited to not being denied parole for arbitrary or impermissible reasons" (internal quotation marks omitted)), *aff'd*, 381 F. App'x 26 (2d Cir. 2010). Plaintiff does, therefore, have a minimal liberty interest in the decision made on his parole application not being constitutionally arbitrary or impermissible.

B. <u>Prong Two: Denied Parole for Constitutionally Arbitrary or Impermissible Reasons</u>

Turning to Plaintiff's limited liberty interest, the issue is whether Plaintiff pled sufficiently a deprivation of his right not to have parole denied for constitutionally arbitrary or impermissible reasons. As a general proposition, a violation of state law does not *ipso facto* mean that the resultant decision was the product of constitutionally arbitrary or impermissible conduct. *See Amaker v. Schiraldi*, No. 15-CV-04879, 2017 WL 4402443, at *10 (E.D.N.Y. Sept. 29, 2017) (observing, in reference to the Parole Board's alleged violation of New York State law, that "state law violations generally are matters for consideration by the state courts and do not become constitutional issues" (internal quotation marks omitted)), *aff'd*, 812 F. App'x 21 (2d Cir. 2020); *Mabry v. Cuomo*, No. 11-CV-04456, 2012 WL 1711549, at *2 (S.D.N.Y. May 9, 2012) (explaining that the Parole Board must comply with New York State law and, "[i]f it does not, and it violates the law, that is not a review for the federal courts but is instead a determination left to the state courts"). To this point, the Second Circuit has observed that even if New York State adopted a policy explicitly violating state law—such as one to deny any violent offender's parole application as a matter of course— that "policy would not violate the Due Process Clause even if the policy were adopted or implemented in violation of state law." *Graziano*, 689 F.3d at 116. While inmates in such a case might "be able to state a valid claim in New York State courts under New York State law," there would be no "claim under the Due Process Clause of the United States Constitution." *Id*. The

question for the instant analysis, then, is whether Plaintiff identified procedural deficiencies of a constitutional dimension.

The Court concludes that Plaintiff has not pled facts plausibly supporting the conclusion that the three decisions were reached in a constitutionally arbitrary or impermissible fashion.

Plaintiff complained about several issues that he claims resulted in a constitutionally arbitrary and impermissible denial of parole, but none of them are plausible. Indeed, Plaintiff's allegations constitute nothing more than bald conjecture and surmise. He argues, for example, that: (1) the Commissioners ignored his submissions and/or did not pay attention; (2) the Parole Board denied him access to an unspecified letter; (3) the outcomes were predetermined; and (4) the procedures were inherently unconstitutional. (*See* FAC ¶¶ 24(a)-(b), 84, 86-90, 115-17). Plaintiff does not allege, *inter alia*, how and when the Parole Board ignored him or his submissions, what submissions were ignored, when the Parole Board denied him access to a letter, the missing letter's theoretical import, how the outcomes were predetermined, or what about these interviews—apart from disagreeing with the conclusions—were unconstitutional. (*See generally* FAC; Opp.). Conclusory allegations cannot support this second element of a due process claim. *See Baker v. New York State Dep't of Corr. & Cmty. Supervision*, No. 17-CV-1270, 2018 WL 357297, at *6 (N.D.N.Y. Jan. 10, 2018) ("[O]ther than conclusory allegations, the Complaint is void of any facts or argument to plausibly suggest that Plaintiff was denied release arbitrarily or capriciously."); *cf. Richard v. Fischer*, 38 F. Supp. 3d 340, 359 (W.D.N.Y. 2014). Plaintiff complains also that he was denied counsel. (*See* FAC ¶¶ 24(c), 90). But he did not plead that he requested an attorney and, in any event, there is no right to counsel during a parole board interview. *Menechino v. Oswald*, 430 F.2d 403, 406-07 (2d Cir. 1970). Plaintiff asserts likewise that he was never told what he had to do to secure parole. (*See* FAC ¶¶ 24(f)). On this point, "[t]he Constitution protects [Plaintiff] from

being denied parole for arbitrary or impermissible reasons, but does not mandate the State to rehabilitate him or make him fit for early release." *See Hodge v. Griffin*, No. 13-CV-01977, 2014 WL 2453333, at *13 (S.D.N.Y. June 2, 2014) (internal quotation marks omitted).

Branching off from the issues identified above, Plaintiff faults Defendants for reaching their decisions by relying upon the crimes he committed. (*See* FAC ¶¶ 24(d), 47, 84; Opp. at 23). This is, of course, one of many factors listed in statute and regulation, and considered properly by Defendants. N.Y. Exec. Law § 259-i(2)(c)(A) ("In making the parole release decision, the procedures adopted . . . shall require that the following be considered: . . . (vii) the seriousness of the offense . . . ."); N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.2(d)(7). Plaintiff complains in a similar vein that Defendants ignored his growth and rehabilitation. (*See* FAC ¶¶ 24(e), 43, 47, 73, 84, 90, 117). The documents provided to the Court reveal just the opposite: the Parole Board considered his apparent growth, but gave it little weight in comparison to other factors. (*See* Shevlin Ex. A at 20-21; Shevlin Ex. B at 2-3; Shevlin Ex. C at 25-26; Shevlin Ex. D at 3; Shevlin Ex. E at 32-33; Shevlin Ex. F at 2-3).

Notwithstanding the issues catalogued thus far, Plaintiff suggested plausibly that the Parole Board did not comply with the governing regulations with respect to the November 2019 and June 2020 interviews because Defendants did not "specify the specific scale that they were departing from . . . ." (FAC ¶¶ 19, 22, 58; *see also id.* ¶¶ 62, 64-65, 120). Indeed, the Appeals Unit concluded that those decisions denying parole were insufficient and vacated them. (Linares Ex. 1; Linares Ex. 2). Plaintiff claims also that the applicable regulations mandate that the Parole Board "address all the statutory factors in each hearing." (FAC ¶ 108). However, accepting as true Plaintiff's claim that Defendants violated state regulations, there is no basis to conclude that deviating from numbers generated by an assessment relied upon by New York State—or failing to state explicitly

every factor considered—is constitutionally arbitrary or impermissible conduct. *See Graziano*, 689 F.3d at 116; *Mathie*, 2007 WL 2351072, at *8 ("The argument that a disregard of governing state law inherently renders a parole decision arbitrary or procedurally flawed proves too much. If . . . accepted, every state law requirement would *ipso facto* be incorporated into federal constitutional law."). Indeed, to the extent the Commissioners erred, the Appeals Unit vacated the rulings and directed *de novo* interviews. Plaintiff received all the process that he was due.

In sum, Plaintiff has not pled facts plausibly alleging that the Parole Board rendered decisions in a constitutionally arbitrary or impermissible manner. The claim for relief is, consequently, dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). In this case, the FAC is dismissed with prejudice because any amendment would be futile.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 41, mail a copy of this Memorandum Opinion and Order to Plaintiff, and close this case.

**SO ORDERED:**

Dated:   White Plains, New York
         June 30, 2021

_____
PHILIP M. HALPERN
United States District Judge